## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| DOUGLAS BRUCE, | ) | Case No. 1:23-cv-00373 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF MANSFIELD, OHIO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## OPINION AND ORDER

Plaintiff Douglas Bruce owns a parcel of real estate in the City of Mansfield. He alleges that Defendant, the City of Mansfield, tore down a multi-family home on his property without notifying him of its code violations or of demolition. By doing so, Plaintiff complains that Defendant deprived him of property without due process in violation of the Fifth and Fourteenth Amendments. Further, Plaintiff alleges that Defendant levied excessive fines for the demolition in violation of the Eighth and Fourteenth Amendments. Defendant moved for summary judgment. For the reasons that follow, the Court **GRANTS** Defendant's motion.

## STATEMENT OF FACTS

On Defendant's motion for summary judgment, the Court construes the record in Plaintiff's favor as the non-moving party. The record establishes the following facts.

Plaintiff Douglas Bruce resides in El Paso County, Colorado, and has used a Colorado post office box to receive mail since August 1986. (ECF No. 20-2,

PageID #179.)  In April 2013, Mr. Bruce purchased a parcel of real estate in the City of Mansfield, Ohio for $10,000.  (*Id.*, PageID #181.)  A multifamily home sat on the property.  (ECF No. 20-1, PageID #130.)  Mr. Bruce never visited the property or made improvements to it since he bought it as an investment.  (ECF No. 20-2, PageID #186.)

The City claims that it issued five notices to Mr. Bruce between January 24, 2014 and October 19, 2016 regarding several violations of the Mansfield City Codified Ordinances, including junk accumulation, sidewalk violations, and failure to maintain the lawn.  (ECF No. 20-1, ¶¶ 3–7, PageID #121–22; ECF No. 23, PageID #205–06.)  Three of these notices were addressed to Mr. Bruce's post office box in Colorado (ECF No. 20-1, PageID #124–26), while the other two (relating to maintaining the lawn and removal of accumulated junk) were addressed to "TENANT" and were allegedly sent to the Mansfield property (*id.*, PageID #127–28).

On April 28, 2017, the City allegedly sent a notice regarding a demolition inspection of the property scheduled for May 16, 2017 and addressed to Mr. Bruce at his post office box in Colorado.  (*Id.*, PageID #129.)  On June 15, 2017, the City allegedly sent Mr. Bruce an order of demolition, which stated that the Mansfield property was deemed to be unsafe and, therefore, declared a nuisance following an inspection under Mansfield's ordinances.  (*Id.*, PageID #130.)  This notice advised Mr. Bruce that he could appeal the order within 10 days, and the City allegedly sent an appeal form the same day.  (*Id.*, PageID #130–31.)  Two other notifications with the same date and sent to the same addressee provided a waiver of demolition and

notice to remove personal property from the property before its demolition.  (*Id.*, PageID #132–34.)  According to the affidavit of the City's demolition coordinator, these documents were sent by certified mail.  (*Id.*, ¶¶ 9 & 11, PageID #122.)  The City claims that the Richland County Land Reutilization Corporation, also known as the County Land Bank, also sent the demolition notice and the notices that followed through the U.S. Postal Service.  (*Id.*, ¶ 14, PageID #122.)  A tracking receipt from the U.S. Postal Service shows delivery on June 29, 2017.  (*Id.*, PageID #134.)

The City claims it posted the notice of demolition on the front door of the property and published it in the local newspaper.  (*Id.*, ¶¶ 11 & 16, PageID #122–23.)  Further, the City claims that the County Land Bank performed a title search and verified any liens on the property.  (*Id.*, ¶ 16, PageID #122–23.)  On November 6, 2017, the City claims it sent Mr. Bruce a notice regarding the boarding up of his property's windows and doors.  (*Id.*, ¶ 17, PageID #123.)

It is undisputed that Mr. Bruce did not respond to any of these notices.  In his complaint, Mr. Bruce alleges that the City demolished the building on his property "[w]ithout proper notice of any type or kind," including notice of "any maintenance issues or other possible bases for the demolition, and/or proper notice of the issuance of fines or orders in connection with the same."  (ECF No. 1, ¶ 9, PageID # 2.)  In response to the City's evidence on summary judgment, Plaintiff argues that, while "[t]hese exhibits appear to be copies of letters maintained in Mansfield's files, . . . there is no evidence that these documents were actually sent to or received by Mr. Bruce."  (ECF No. 23, PageID #206.)  In this way, Plaintiff argues that he never

3

received actual notice or personal service of the City's intention to demolish the building on his property.

On October 2, 2018, the City passed an ordinance declaring the property "insecure, unsafe, structurally defective and dangerous to life and other property by reason of its hazardous and unsound condition, unsound and unsafe walls, floors, foundation and ceilings, and by reason of want of repair, age and dilapidation." (ECF No. 20-1, PageID #141.) The City found the property "beyond repair" and a "nuisance." (*Id.*) On summary judgment, Plaintiff does not dispute the condition of the property.

Between May 29, 2018 and September 6, 2019, the City claims it sent notices to utility companies regarding demolition and verification of utility disconnections, indicating that the Mansfield City Council had approved the demolition. (*Id.*, ¶ 18, PageID #123.) The County Land Bank prepared a demolition bid, which showed an estimated abatement for the project of $76,000. (*Id.*, ¶ 20, PageID #123.) In April 2016, the gas line to the property was abandoned. (*Id.*) In October 2019, surveyors took photographs of the property to verify its condition. (*Id.*, ¶ 21, PageID #123 & #150–64.)

On January 22, 2020, the City started demolition and completed the project by the end of the month. (*Id.*, ¶ 22, PageID #123.) The City sent a bill to Mr. Bruce at his Colorado post office box for $74,455 in demolition charges and administrative costs. (*Id.*, ¶ 23, PageID #123 & #165.) Mr. Bruce does not dispute receiving the bill but did not pay it. (*Id.*, ¶ 23, PageID #123.) The City claims that, other than a tax

4

lien in the amount of approximately $1,850, no other fines were assessed against the property.  (ECF No. 20, PageID #103.)  The City transferred the property to the County Lank Bank, which sold it at foreclosure due to the tax delinquency and the cost of demolition.  (ECF No. 20-1, ¶ 24, PageID #123; ECF No. 20, PageID #103.)

### STATEMENT OF THE CASE

On February 24, 2023, Plaintiff filed suit under 42 U.S.C. § 1983, bringing four claims:  (1) deprivation of property under the Fifth and Fourteenth Amendments, (2) violation of procedural due process under the Fifth and Fourteenth Amendments, (3) violation of substantive due process, and (4) violation of the Eighth and Fourteenth Amendments.  (ECF No. 1, ¶¶ 16–48, PageID #4–8.)  In his complaint, Plaintiff seeks a declaratory judgment as well as actual, punitive, compensatory, and special damages, along with attorneys' fees and costs.  (*Id.*, ¶¶ 1–3, PageID #8–9.)  Defendant moved for summary judgment.  (ECF No. 20.)

Notably, this is not the first time Mr. Bruce has brought such claims and made similar arguments.  He filed suit against other municipalities for the demolition of property that he owned but never visited.  *See Bruce v. City of Maple Heights*, No. 1:23-cv-371, 2024 WL 2294779, at *1 (N.D. Ohio May 21, 2024); *Bruce v. City of Cincinnati*, No. 1:23-cv-12, 2024 WL 37123, at *1 (S.D. Ohio Jan. 3, 2024); *Bruce v. City of Miamisburg*, No. 3:21-cv-80, 2023 WL 184010, at *1 (S.D. Ohio Jan. 13, 2023), *aff'd*, No. 23-3080, 2023 WL 6623194, at *1 (6th Cir. Oct. 11, 2023).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  On a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party. *Kirilenko-Ison v. Board of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 660 (6th Cir. 2020) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The moving party has the initial burden of establishing that there are no genuine issues of material fact as to an essential element of the claim or defense at issue.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 & n.12 (6th Cir. 1989); *Chappell v. City of Cleveland*, 584 F. Supp. 2d 974, 988 (N.D. Ohio 2008).  After discovery, summary judgment is appropriate if the nonmoving party fails to establish "an element essential to that party's case and upon which that party will bear the burden of proof at trial." *Tokmenko v. MetroHealth Sys.*, 488 F. Supp. 3d 571, 576 (N.D. Ohio 2020) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

The Court's function at this stage is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "The party seeking summary judgment has the initial burden of informing the court of the basis for its motion" and identifying the portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Tokmenko*, 488 F. Supp. 3d at 576 (citing

6

*Celotex Corp.*, 477 U.S. at 322).  Then, the nonmoving party must "set forth specific facts showing there is a genuine issue for trial." *Id.* (citing *Anderson,* 477 U.S. at 250).  "When the moving party has carried its burden under Rule 56(c), its opponent must do more than show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.

If a genuine dispute exists, meaning that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," summary judgment is not appropriate.  *Tokmenko*, 488 F. Supp 3d at 576 (citing *Anderson*, 477 U.S. at 250).  However, if "the evidence is merely colorable or is not significantly probative," summary judgment for the movant is proper.  *Id.*  The "mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson*, 477 U.S. at 247–48).  "Just as a plaintiff may not rely on conclusory allegations to proceed past the pleading stage, so too a plaintiff may not rely on conclusory evidence to proceed past the summary-judgment stage."  *Viet v. Le*, 951 F.3d 818, 823 (6th Cir. 2020) (cleaned up) (citations omitted).  "Conclusory Statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment."  *Id.* (quoting *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009)).

To determine whether a genuine dispute about material facts exists, it is not the Court's duty to search the record; instead, the parties must bring those facts to the Court's attention.  *See Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th

7

Cir. 1996).  Ultimately, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251.

## ANALYSIS

The parties sharply contest the evidentiary record on summary judgment and whether Mr. Bruce received notice of the City's declaration of his property as a nuisance and its intent to demolish it.  But the Court need not wade into these matters because the resolution of Defendant's motion for summary judgment turns on one undisputed date:  January 30, 2020—the date by which the City completed demolition of the structure on Mr. Bruce's property.

Defendant argues that the statute of limitations bars Plaintiff's claims.  (ECF No. 20,  PageID #104–06;  ECF  No. 24,  PageID #234–41.)  In response, Plaintiff invokes the discovery rule, arguing that the statute of limitations has not run or, at a minimum, a dispute of fact exists regarding when the statute of limitations began. (ECF No. 23, PageID #209–12.)

Section 1983 itself does not provide a statute of limitations.  In such circumstances, federal courts borrow the applicable limitations period from the most analogous one available under State law.  *See Owens v. Okure*, 488 U.S. 235, 249–50 (1989).  The City argues that Ohio's two-year statute of limitations in Section 2305.10 governs (ECF No. 104), and Plaintiff does not argue for another period (ECF No. 23, PageID #209).  Therefore, the Court assumes that a two-year statute of limitations governs Plaintiff's claim.

8

When a cause of action under Section 1983 accrues presents "a question of federal law that is *not* resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). In *Wallace*, the Supreme Court recognized "the standard rule that accrual occurs when the plaintiff has a complete and present cause of action . . . that is, when the plaintiff can file suit and obtain relief." *Id.* (quoting *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., Inc.*, 522 U.S. 192, 201 (1997)) (cleaned up). Without question, Plaintiff's causes of action under Section 1983 accrued on January 30, 2020 when the City completed demolition of the structure on his property. (ECF No. 20-1, ¶ 22, PageID #123.)

Instead of contesting the applicable limitations period, Plaintiff argues that his claim is timely under the discovery rule. Under federal law, the discovery rule tolls the statute of limitations until a plaintiff "knows or should have known certain facts related to their injury." *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 698 (6th Cir. 2022). The Supreme Court has determined that the limitations period starts to run when the plaintiff has a "complete and present cause of action" such that he can "file suit and obtain relief." *Wallace*, 549 U.S. at 388 (citations omitted). The Sixth Circuit employs a somewhat different formulation. *See Dibrell v. City of Knoxville*, 984 F.3d 1156, 1162 (6th Cir. 2021); *see also Reguli v. Russ*, 109 F.4th 874, 879 (6th Cir. 2024) (per curiam). Under the law of this Circuit, the limitations period does not begin to run until the plaintiff discovers or reasonably should discover the facts giving rise to his claim. *Reguli*, 109 F.4th at 879.

9

"A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 843 (6th Cir. 2015) (quoting *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005)). Specifically, "the clock starts on the 'discovery of the injury, not discovery of the other elements of a claim.'" *Reguli*, 109 F.4th at 883 (quoting *Rotella v. Wood*, 528 U.S. 549, 555 (2000)).

Applying these rules here, the Court assesses when Plaintiff knew of or should have known of his injury. *Reguli*, 109 F.4th at 879. Even if Plaintiff did not have actual notice in June 2017 when the City sent notice to Mr. Bruce at his post office box in Colorado, he should have discovered the facts giving rise to his claim more than two years before he filed suit on February 24, 2023. It is undisputed that the City completed demolition of the structure on his property by January 30, 2020. (ECF No. 20-1, ¶ 22, PageID #123.)

In Plaintiff's prior lawsuit against the City of Miamisburg, the Southern District of Ohio granted summary judgment for the defendant. It held that Mr. Bruce should have known of his property's demolition within eight months. *Miamisburg*, 2023 WL 184010, at *4. The court reasoned that, "[f]or an individual with 46 years of experience in property ownership and who currently owns 50 properties across the country, it is not reasonable for Bruce to have gone at least eight months without realizing two of his building [*sic*] were no longer in existence." *Id.* Further, the court recognized that Mr. Bruce had any number of means to learn of the demolition, from asking someone "to drive by the property" to having an agent "simply visit the

10

properties, at which point they would have seen the Final Violation Notices posted on the front doors." *Id.*

On appeal, the Sixth Circuit affirmed, noting that a "reasonable property owner—one who made any effort at all to stay apprised of his buildings' condition . . . and to ensure that they remained in compliance with the municipal code"—should have known about the demolition of his properties eight months after they were demolished. *Miamisburg*, 2023 WL 6623194, at *1. And this accrual date might be generous. In Plaintiff's lawsuit against Maple Heights, another judge in the Northern District of Ohio reasoned that, because "[d]emolition of a house is open, noisy, and its effects are plain for the eye to see," Mr. Bruce was on notice of his claimed injury "when the demolition occurred." *Maple Heights*, 2024 WL 2294779, at *7; *see also Jacks v. City of Youngstown*, 2021 WL 3288572, at *7 (N.D. Ohio Aug. 2, 2021) (holding that the limitations period begins to run on the date of demolition). Such an approach more closely tracks the approach the Supreme Court takes, running the limitations period from the date an injury becomes complete such that a plaintiff can file a lawsuit for his injury. *Wallace*, 549 U.S. at 388 (citations omitted).

Assuming the more generous eight-month window from the Miamisburg case applies, the accrual date for Plaintiff's claims is September 30, 2020—meaning he should have filed suit within two years of that date. Therefore, this suit, filed in February 2023, comes too late.

Plaintiff fails to identify a specific date on which he claims he discovered his injury. Yet he bears the burden to "set forth specific facts showing there is a genuine

11

issue for trial." *Tokmenko*, 488 F. Supp. 3d at 576 (citing *Anderson*, 477 U.S. at 250). Plaintiff claims that the dates on which he knew or reasonably should have known about his alleged injury or that the City was the alleged cause of that injury are "factual disputes."  (ECF No. 23, PageID #211.)  But he fails to explain how his lawsuit might be timely even accounting for eight months of tolling from the completion of demolition—let alone without it.  At best, he challenges the statute of limitations with "[c]onclusory [s]tatements unadorned with supporting facts," which are "insufficient to establish a factual dispute that will defeat summary judgment." *Viet*, 951 F.3d at 823 (quoting *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009)).  In short, Plaintiff fails to carry his burden to withstand a summary judgment.

Because Plaintiff's filing of his complaint on February 24, 2023 came well after the expiration of the limitations period, and because Plaintiff has not demonstrated timeliness even with the benefit of tolling, the Court holds that all of Plaintiff's claims are time-barred.  Based on this resolution, the Court need not reach the due-process considerations under the Fourteenth Amendment or Plaintiff's arguments under the Fifth and Eighth Amendments.  Therefore, the Court has no occasion to consider application of other recent Sixth Circuit decisions here.  *See McIntosh v. City of Madisonville*, No. 24-5383, 2025 WL 2251719, at *2–5 (6th Cir. Jan. 21, 2025); *First Floor Living v. City of Cleveland*, 83 F.4th 445 (6th Cir. 2023).

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's motion for summary judgment.  (ECF No. 20.)

**SO ORDERED.**

Dated:  February 18, 2025

_____
J Philip Calabrese
United States District Judge
Northern District of Ohio